UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EMAD SAGHIR | Case No. 24 CR 475<br><br>Judge Sunil R. Harjani |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant is a child molester who pleaded guilty to transporting prepubescent child pornography from the Dark Web to his Google Drive account. Unlike many child pornography offenders, defendant's predilection for child sexual abuse material crossed the line from possessing images to committing hands-on abuse. Because of the grave nature of his criminal conduct and the danger he poses to the community, the government respectfully requests that the Court impose an above-Guidelines sentence of 168 months' imprisonment. Such a sentence far more accurately reflects defendant's history and characteristics and the other § 3553(a) factors than would a sentence within the Guidelines range.

**I.     FACTUAL BACKGROUND**

The offense conduct in this case is set out in the Presentence Investigation Report (Dkt. 48) ("PSR"), the Corrected Government's Version of the Offense ("GVO") and accompanying exhibits, and the plea agreement (Dkt. 39).

Between September 16, 2023 and October 8, 2023, defendant uploaded six videos depicting prepubescent child pornography, which are described in detail in the PSR and the Plea Agreement. *See* PSR ¶¶ 10-14; Plea Agmt. ¶ 6.

As further detailed in the GVO, defendant then traveled to Japan. During parts of the trip in November 2023, three minor children were in defendant's custody or control, including a then-10-year-old female child ("Minor Victim A"). PSR ¶ 45; Plea Agmt. ¶ 17. While riding a bus during the trip, defendant—in an effort to groom Minor Victim A for sexual abuse—showed Minor Victim A pornographic images of himself receiving oral sex from an adult woman. PSR ¶ 45. He also told her it "felt really good" and asked her how it made her feel. *Id.*

Later in the trip, defendant was babysitting the three minor children in a hotel room. PSR ¶ 45. While the other two children watched TV and played games, the defendant engaged in further grooming behavior by electronically messaging Minor Victim A to entice her to come into the bathroom of the hotel room with him. *Id.* While two children sat on the other side of the hotel bathroom door, defendant repeatedly insisted that Minor Victim A take her pants off in the bathroom, which she refused to do. *Id.* Instead, defendant persuaded Minor Victim A to use her hands to masturbate him until he ejaculated into the sink in front of her, all while the other two children continued to sit outside the bathroom door. *Id.*

After arriving home from Japan, on November 30, 2023, defendant transported three more videos containing child pornography from the Dark Web to his Google Drive account. PSR ¶ 14. In total, defendant transported at least nine videos depicting child pornography, all nine of which depicted prepubescent children engaged in sex acts. *Id.* ¶¶ 12-13.

2

## II. PROCEDURAL HISTORY

On October 9, 2024, defendant was charged by indictment with five counts of transportation of child pornography, in violation of 18 U.S.C. 2252A(a)(1) and (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. 2252A(a)(5)(B) and (b)(2). Dkt. 1. On August 7, 2025, defendant pleaded guilty to one of the transportation counts (Count 2), pursuant to a plea agreement. Dkt. 38.

## III. GUIDELINES CALCULATIONS

As a matter of procedure, the Court "must begin [its] analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 569 U.S. 530, 541 (2013) (quoting *Gall v. United States*, 552 U.S. 38, 50 n. 6 (2007)).

The government agrees with the offense level calculations set forth in the PSR, which are the same as those included in the Plea Agreement and result in a total offense level of 28. *See* PSR ¶¶ 33-44; Plea Agmt. ¶ 9. The government agrees with the PSR's determination that defendant has zero criminal history points and falls within criminal history category I. PSR ¶ 49; Plea Agmt. ¶ 9. Accordingly, the government agrees with the PSR's determination that, based upon a total offense level of 28 and a criminal history category of I, the advisory Guideline range is 78 to 97 months' imprisonment, in addition to any supervised release, restitution, special assessment, and fine the Court may impose. Defendant is also subject to a five-year mandatory minimum sentence. *See* PSR ¶ 101 (citing 18 U.S.C. 2252A(a)(1)).

## IV. APPLICATION OF THE STATUTORY SENTENCING FACTORS

Sentencing has four purposes: retribution; deterrence; incapacitation; and rehabilitation. *See United States v. Milbourn*, 600 F.3d 808, 812 (7th Cir. 2010). The Court must impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). In doing so, the Court must consider the statutory factors outlined in 18 U.S.C. § 3553(a)(1)-(7), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] (3) the kinds of sentences available.

*Id.* § 3553(a)(1)-(3). The Court must also respect "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as well as "the need to provide restitution to any victim of the offense." *Id.* § 3553(a)(6)-(7). Finally, the Court must consider the Guideline range and any pertinent policy statements issued by the United States Sentencing Commission. *Id.* § 3553(a)(4)-(5).

### A. Imprisonment

Considering the § 3553(a) factors, the government recommends a 168-month sentence of imprisonment, which is above the Guidelines range.

4

> **1. A 168-Month Sentence Is Necessary to Fully Account For The History and Characteristics of the Defendant And to Protect The Public.**

The most pertinent aspect of defendant's history is his gruesome molestation of Minor Victim A, for which defendant has never been held to account and which is not factored into his Guidelines calculation. The Court can, and should, account for this admitted hands-on sexual abuse by sentencing defendant well above the Guidelines range for the offense of conviction. *See Williams v. New York*, 337 U.S. 241, 247 (1949) (holding that the sentencing court properly considered the uncharged burglaries at sentencing, noting "[h]ighly relevant—if not essential to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."); *Nichols v. United States*, 511 U.S. 738, 747 (1994) (sentencing court may "consider[] a defendant's past criminal behavior, even if no conviction resulted from that behavior"); *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 573, n. 19 (1996) ("A sentencing judge may even consider past criminal behavior which did not result in a conviction").

This approach is well-supported by recent precedents. The Seventh Circuit has repeatedly affirmed the imposition of above-Guidelines sentences in situations like this one where the Guidelines fail to account for uncharged criminal conduct. *See United States v. Bridgewater*, 950 F.3d 928, 936-37 (7th Cir. 2020) (affirming above-Guidelines sentence in solicitation of minor case where "the district court gave ample weight to the Guidelines but ultimately concluded they failed to properly reflect the scope of [defendant's] conduct" because defendant attempted to entice a minor and

meet him for sexual activity); *United States v. Mejia*, 859 F.3d 475, 479 (7th Cir. 2017) (affirming above-Guidelines sentence where "the Guidelines did not adequately address [defendant's] incredibly troubling conduct" because they did not account for an uncharged but proven aggravated assault); *United States v. Weathers*, 744 F. App'x 947, 948 (7th Cir. 2018) (collecting cases where the Court of Appeals "affirm[ed] above-guidelines sentences based on … considerations of uncharged violent conduct") (citing *Mejia*, 859 F.3d at 478-79; *United States v. Gill*, 824 F.3d 653, 657, 659, 665–666 (7th Cir. 2016) (affirming 33 months above guidelines range for heroin distribution conspiracy involving uncharged violent activity "because the actual guidelines range did not capture the full range of [defendant's] conduct and participation in violent activity."); *United States v. Abebe*, 651 F.3d 653, 655–57 (7th Cir. 2011) (affirming 75 months above-Guidelines sentence for armed robbery involving uncharged shooting of a bystander)).

Indeed, the Guidelines themselves have recognized that an upward departure is warranted where, as here, a child pornography transportation defendant "engaged in sexual abuse or exploitation of a minor at any time (***whether or not such abuse or exploitation occurred during the course of the offense or resulted in a conviction for such conduct***) and subsection (b)(5) [pattern of sexual activity] does

6

not apply[.]"[1] 2024 Sentencing Guidelines, § 2.3, Comment 9 (emphasis added).[2] This comment acknowledges the reality that defendants who have crossed the Rubicon from child pornography possession offenses to hands-on sexual abuse are unquestionably more culpable and more dangerous, and it accounts for this by recommending an upward variance. *See United States v. Chapman*, 694 F.3d 908, 915 (7th Cir. 2012) ("We have called it 'a mistake to lump together different types of sex offender' and emphasized that a pedophilic sex offender like [defendant] 'who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-pornography offense.'") (quoting *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011)).

The need to impose an above-Guidelines sentence is heightened in this case because, unlike many other defendants to whom the comments' upward departure recommendation applies, defendant did not sustain a conviction for his abuse of Minor Victim A. This means the abuse is absent not only from the offense level calculation but also from the calculation of his criminal history score. *Cf. United States v. Dickerson*, 42 F.4th 799, 803 (7th Cir. 2022) (affirming above-Guidelines

---

[1] The subsection (b)(5) pattern of activity enhancement does not apply in this case because it requires two sexual acts to form a pattern and the transportation of pornography offense itself does not count in the pattern analysis.

[2] The 2025 edition of the Sentencing Guidelines dropped many comments regarding upward and downward departures, including this one. But, as explained throughout this memorandum, the reasoning undergirding this comment remains as cogent as ever.

7

sentence imposed in part because defendant's "criminal history score did not reflect the seriousness of [defendant's] crimes or the extent of his criminal history").

In determining how far above the Guidelines range to sentence defendant, the Court should fully weigh defendant's uncharged, criminal sexual abuse of Minor Victim A and sentence defendant accordingly. To quantify how far upward to depart, the Court should consider the Guidelines range applicable to defendant's sexual abuse of Minor Victim A. Under a hypothetical calculation of the Guidelines for sexual abuse of a minor, the base offense level would be 28.[3] *See* Guideline § 2G1.3(a)(4). That offense level would be increased by two levels because defendant was babysitting Minor Victim A at the time of the abuse, meaning she was in his custody and care at the time. *Id.* § 2G1.3 (b)(1).[4] The offense level would be increased an additional two levels because defendant unduly influenced Minor Victim A to engage in prohibited sexual conduct by showing 10-year-old Minor Victim A videos of himself receiving oral sex to coax her into engaging in sex acts with him. *Id.* § 2G1.3(b)(2). And the Court would add another two levels because defendant used a computer to induce Minor Victim A to engaged in sexual conduct with him when he messaged her to join him in the bathroom. *Id.* § 2G1.3(b)(3). Finally, the offense level would increase by 8-levels because at the time defendant engaged in sexual contact with Minor Victim A—namely, compelling her to masturbate him until he ejaculated into the

---

[3] To be clear, this calculation is merely hypothetical. The government does ***not*** contest that defendant's Guidelines range is 78 to 97 months.

[4] This does not include the aggravating fact that the other minor children were in defendant's sole custody and care at the very moment he was abusing Minor Victim A just feet away from them.

8

sink—she was less than 12-years-old. *Id.* § 2G1.3(b)(3). That would result in a total offense level of 38. With a 3-level reduction for acceptance of responsibility, the offense level would be 35, which would result in a range of 168 to 210 months' imprisonment for a defendant in criminal history category I.[5]

A sentence of 168 months—at the low end of the range for sexual abuse of a child—is sufficient but not greater than necessary because it is a much more accurate reflection of defendant's history and characteristics than a sentence within the Guidelines range for the transportation offense. Such a sentence would account for the horrific abuse of Minor Victim A and properly address the need to protect the public from the defendant.

### 2. A 168-Month Sentence Reflects the Nature and Circumstances of The Offense.

Defendant's possession and transportation of child pornography must be considered in its entire context. Defendant uploaded six videos of prepubescent child pornography to his personal Google Drive account in the days and weeks leading up to the trip to Japan. On the trip, he showed adult pornography to Minor Victim A and then horrifically abused her. When he returned from the trip, defendant continued to upload child pornography. The transportation offense should therefore be seen for what it was: part of a pattern of abuse of innocent, vulnerable victims, not a one-off offense.

---

[5] If the abuse were grouped with the offense of conviction, defendant's range would be even higher, at 188 to 235 months' imprisonment.

9

Even focusing narrowly on the uploads themselves, the nature and circumstances of the offenses are highly deleterious and justify a substantial sentence. Addressing the possession of child pornography, the Seventh Circuit explained: "Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others." *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007). "The possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters." *United States v. Sherman*, 268 F.3d 539, 547 (7th Cir. 2001); *see also United States v. Goff*, 501 F.3d 250, 259 (3rd Cir. 2007) ("Consumers such as [defendant] who 'merely' or 'passively' receive or possess child pornography directly contribute to this continuing victimization. . . . [H]is voyeurism has actively contributed to a tide of depravity that Congress, expressing the will of our nation, has condemned in the strongest terms.").

Defendant's transportation of child pornography victimized all the children depicted in the pornographic images and videos that defendant transmitted using the Dark Web. The continued circulation of this material, especially on Dark Web servers that are difficult and often impossible for law enforcement to monitor, means that these children will likely be re-victimized for the rest of their lives. The grievousness of this harm is underscored in the legislative history of the Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121 (codified at 18 U.S.C. § 2252A),

where Congress recognized the destructive impact the manufacture of child pornography has on the child victim:

> Congress finds that –
>
> (1) the use of children in the production of sexually explicit material, including photographs, films, videos, computer images, and other visual depictions, is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved;
>
> (2) where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years; . . . .

S. Rep. No. 104-358, 1996 WL 506545, § 2(1), (2) (Aug. 27, 1996).

In sum, the nature and circumstances of the offense support a 168-month term of imprisonment.

### 3. A 168-Month Sentence of Imprisonment Is Needed to Promote Respect for the Law and Afford Adequate Deterrence.

"Another important goal of sentencing is 'to afford adequate [general] deterrence to criminal conduct.'" *United States v. Warner*, 792 F.3d 847, 860 (7th Cir. 2015) (quoting 18 U.S.C. § 3553(a)(2)(B)) (second alteration in original); *see also United States v. McQueen*, 727 F.3d 1144, 1158 (11th Cir. 2013) ("[G]eneral deterrence ... is one of the key purposes of sentencing." (quoting *United States v. Medearis*, 451 F.3d 918, 920-21 (8th Cir. 2006) (second alteration in original))).

There is a strong need for deterrence in cases like this one, where the perpetrator may operate under the misperception that by merely possessing or

11

transporting child pornography, he is not himself victimizing the children in the images. In reality, the victims of defendant's crimes are those children that are being, and will be, victimized as a result of the additional demand for child pornography. The trafficking of child pornography affects not only the children involved in the particular pornography involved in this case, but other children and society in general as well. As Congress recognized in enacting the federal child pornography statute, the trafficking of child pornography "inflames the desires of child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials." S. Rep. No. 104-358, 1996 WL 506545, § 2(10) (Aug. 27, 1996).

Further, defendant's possession of child pornography is sexual exploitation in and of itself. The legislative history explains why prohibiting the possession – in addition to the manufacture and transmission – of child pornography protects the children in the images:

> prohibiting the possession and viewing of child pornography will encourage the possessors of such material to rid themselves or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children; . . . .

*Id.* at § 2(12). By transporting child pornography, defendant perpetuated the abuse and helped to preserve a permanent record of it. As the Fifth Circuit explained, "[u]nfortunately, the 'victimization' of the children involved does not end when the pornographer's camera is put away." *United States v. Norris*, 159 F.3d 926, 929 (5th

12

Cir. 1998). Rather, consumers of child pornography "perpetuate[ ] the abuse initiated by the producer of materials," *id.*, because the pornography creates a "permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)). As the Supreme Court noted:

> The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children in at least two ways. First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled.

*Ferber*, 458 U.S. at 759; *see also United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) ("The greater the customer demand for child pornography, the more that will be produced."). These holdings show the urgent need for deterrence in cases like this one.

Moreover, as discussed above, specific deterrence also counsels in favor of an above-Guidelines sentence in this case. Because defendant both transported child pornography and committed an act of hands-on abuse, there is substantial risk that defendant will recidivate. *See Garthus*, 652 F.3d at 720 ("This defendant's characteristics suggest that he is more dangerous than the average consumer of child pornography. A pedophilic sex offender who has committed both a child-pornography offense and a hands-on sex crime is more likely to commit a future crime, including another hands-on offense, than a defendant who has committed only a child-

13

pornography offense."). There is a need, then, to both specifically deter the defendant and to render it impossible for him to commit further sex crimes. *See Milbourn*, 600 F.3d at 812 (incapacitation is one of the purposes of sentencing).

### B. Supervised Release

Under 18 U.S.C. § 3583(k), the Court must impose a term of supervised release of five years and up to life. PSR ¶ 104. The government agrees with the PSR's statement that the Court must make an individualized assessment to determine the term of supervised release. *See* USSG §§5D1.1 and 5D1.2, 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7), and 3583(a)-(c). A term of supervised release of ten years is warranted for the same reasons a significant term of imprisonment is warranted. *See United States v. Armour*, 804 F.3d 859, 868 (7th Cir. 2015) (holding that a district court's justification for imposing a term of imprisonment can also apply to a term of supervised release); s*ee also United States v. Bloch*, 825 F.3d 862, 869-72 (7th Cir. 2016) (holding that courts are not required to "provide two separate explanations, one for the term of imprisonment and one for the term of supervised release"). The government does not object to the conditions proposed in the PSR. *See* PSR at 20-25.

### C. Restitution

Pursuant to 18 U.S.C. §§ 2259 (which was initially enacted as a component of the Violence Against Women Act of 1994) and 3663A (the Mandatory Victims Restitution Act, or MVRA), the Court must order restitution to the victims of defendant's offense in an amount determined by the Court. Such restitution may include:

14

    (A) medical services relating to physical, psychiatric, or psychological care;
    (B) physical and occupational therapy or rehabilitation;
    (C) necessary transportation, temporary housing, and child care expenses;
    (D) lost income;
    (E) reasonable attorneys' fees, as well as other costs incurred; and
    (F) any other relevant losses incurred by the victim.

18 U.S.C. §§ 2259(b)(2), 2259(c)(2). Section 2259(a) makes restitution mandatory, and it cannot be denied because of "the economic circumstances of the defendant" or "the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2259(b)(4). The government bears the burden of proving the amount of restitution by a preponderance of the evidence. *United States v. Hosking*, 567 F.3d 329, 334 (7th Cir. 2009); 18 U.S.C. § 3664(e).

The statutory minimum restitution award for each victim, after the Court has determined the victim's losses, is $3,000. *See* 18 U.S.C. § 2259(b)(2)(B). In determining the award, restitution does not require a "precise mathematical inquiry." *United States v. Hoskins*, 876 F.3d 942, 947 (8th Cir. 2017) (citation omitted). This amount represents a small portion of the losses these victims have suffered as a result of defendant's possession of their images.[6]

---

[6] Courts have also recognized that although the government has the burden of proof, the court may award restitution in the absence of documented expenses to fulfill the "mandate" that the Supreme Court recognized in *United States v. Paroline*, 572 U.S. 434 (2014). *See United States v. Dillard*, 891 F.3d 151, 161 (4th Cir. 2018) (holding that district court abused its discretion in failing to calculate any award for non-contact victim); *United States v. Sainz*, 827 F.3d 602, 607 (7th Cir. 2016) (noting that the *Paroline* Court left no doubt that "a court must assess as best it can *from available evidence* the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses" (citation omitted)); *United States v. Darbaise*, 164 F. Supp. 3d 400, 408 (E.D.N.Y. 2016)

15

For these reasons, the government concurs with Probation that defendant is required to pay $9,000 restitution to the three victims identified in the GVO. PSR ¶ 99.

**D.     Special Assessment**

Under Title 18, United States Code, Section 3013, defendant is required to pay a $100 special assessment. Defendant is also required to pay an assessment of $5,000 under Title 18, United States Code, Section 3014(a)(3), which requires any non-indigent defendant convicted under Chapter 110 of Title 18 to pay such an assessment.

**E.     Fine**

A fine is also appropriate in this case. In determining an appropriate fine, the Court should first consider any "punishments prescribed by statute," because "'judgments about the appropriate punishment for an offense belong in the first instance to the legislature.'" *United States v. Davis*, 859 F.3d 429, 435 (7th Cir. 2017) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336 (1998)). The Court should also consider the factors set forth in 18 U.S.C. § 3572(a), as well as the factors under 18 U.S.C. § 3553(a). *Id.* at 436; *see also* U.S.S.G. § 5E1.2(d). Here, the statutory maximum fine is $250,000. 18 U.S.C. § 3571(b)(3). The Guidelines suggest a fine of $25,000 to $250,000. U.S.S.G. § 5E1.2.

---

(awarding $3,000 to victims of child pornography possession offense, even though they "have not filed a specific claim or, either through personal counsel or the government, proof of specific loss," where there was no objection from defense counsel).

16

Probation's Sentencing Recommendation states that a fine is not recommended "[b]ased on defendant's financial circumstances" because "defendant does not have the ability to pay a fine." *See* pp. 5-6. The government disagrees. The government will refrain from disclosing the details of defendant's financial records in a public filing, but the PSR makes clear that defendant has considerable assets, certainly enough to pay a fine. *See* PSR ¶¶ 95-98. Based on the grievousness of the offense, the government requests that the Court order defendant to pay the statutory maximum fine of $250,000. *United States v. Lee*, 950 F.3d 439, 444, 446 (7th Cir. 2020) (affirming imposition of a fine despite Probation's recommendation that one not be imposed because defendant "did not appear able to pay one" where "the PSR detailed several assets with a combined value exceeding the ultimate fine amount").

## V. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court impose a 168-month sentence of imprisonment, a ten-year term of supervised release, $9,000 restitution, $5,100 in special assessments, and a $250,000 fine.

Respectfully Submitted,

ANDREW S. BOUTROS
UNITED STATES ATTORNEY

By: /s/ *Michael Maione*
Michael Maione
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn, 5th Floor
Chicago, Illinois 60604

Dated: December 4, 2025